```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

TREVIS TURNER and TARIRAI CHIVORE,

     PLAINTIFFS
                                    08 Civ 4779/PKC/DE
     vs                             COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a
municipal entity, NEW YORK
CITY POLICE OFFICERS,
"JOHN DOES" and DETECTIVE
"JOE" COZART, all of the
identified and non identified
persons in their individual
and in their official capacities,

     DEFENDANTS
_____
```

I. INTRODUCTION

1. This litigation arises out of the Plaintiffs' unlawful stop, detention and custodial arrest and detention on January 12, 2008 at or about 5:30 A.M. on the sidewalk in the vicinity of the Pathmark store at 145th Street and 8th Avenue [Frederick Douglass Boulevard], the preferral of charges against them and the malicious prosecution of them inter-related thereto until the charges, which had been preferred against them, were dismissed, per a Motion of the New York County District Attorney's Office, at a post arraignment Criminal Court proceeding on April 30, 2008.

2. This is an action in which the Plaintiffs seek relief for the violation of their rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

3. The Plaintiffs seek monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiffs secure full and complete relief and justice for the violation of their rights.

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

5. The facts which give rise to the State law claims have a common nucleus with the facts which describe the federal law claims. The federal and the pendent State law claims arise out of the same transaction.

6. The Plaintiffs also invoke the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiffs seek, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

7. This is an action in which the Plaintiffs seek relief for the violation of their rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

## III. THE PARTIES

8. The Plaintiffs are residents of the State of New York, the City of New York, and the County of New York.

9. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

10. Defendants "John Does" and "Joe" Cozart are New York City Police Officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and of the State

of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

## IV. ALLEGATIONS

11.  This litigation arises out of the Plaintiffs' stop, detention, and unlawful and false custodial arrest and detention on January 12, 2008 at or about 5:30 A.M. in the proximity of a Pathmark store at 8th Avenue [Frederick Douglass Boulevard] and 145th Street and, associated therewith, the preferral of charges against them and their malicious prosecution inter-related thereto, the result of which was the eventual dismissal of the charges, which had been preferred against them, on April 30, 2008. The Plaintiffs allege that they were unlawfully stopped, detained, and falsely arrested and maliciously prosecuted and subjected to the intentional reckless and deliberate indifferent and racially discriminatory conduct by New York City Police Officers in violation of the Plaintiffs' rights as guaranteed under both the laws and Constitution of the United States and the laws and Constitution of the State of New York.

12.  This is an action in which the Plaintiffs seek relief for the violation of their rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

13.  The Plaintiffs seek monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiffs secure full and complete relief and justice for the violation of his rights.

14.  The Plaintiffs are residents of the State of New York, the City of New York, and the County of New York.

15.  The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain

a police department for the purpose of protecting the welfare of those who reside in the City of New York.

16.  Defendants "John Does" and "Joe" Cozart are New York City Police Officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiffs' rights as guaranteed under the laws and Constitution of the United States and of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

17.  This litigation arises out of the Plaintiffs unlawful stop, detention and custodial arrest and detention on January 12, 2008 at or about 5:30 A.M in the vicinity of the Pathmark store on 145th Street and 8th Avenue [Frederick Douglass Boulevard], the preferral of charges against them, and their malicious prosecution inter-related thereto.

18.  The charges, which were preferred against the Plaintiffs on January 12, 2008, were dismissed, upon the Motion of the New York County District Attorney's Office, at a post arraignment Criminal Court proceeding on April 30, 2008.

19.  Plaintiff Trevis Turner is twenty four [24] years old.

20.  Plaintiff Trevis Turner's birth date is July 15, 1983.

21.  Plaintiff Tarirai Chivore is twenty three [23] years old.

22.  Plaintiff Tarirai Chivore's birth date is October 30, 1984.

23.  Plaintiff Trevis Turner resides at 2722 8th Avenue [Frederick Douglass Boulevard], Apt. # 5D, New York, New York 10030, across the street from a Pathmark store which was proximate to the sidewalk location where the Plaintiffs were stopped, detained, and arrested.

24. Plaintiff Trevis Turner has resided at the afore-described address for approximately two years.

25. Plaintiff Trevis Turner resides at the foregoing address by himself.

26. Plaintiff Trevis Turner is employed as a personal trainer at the New York Sports Club facility on 145th Street and 8th Avenue [Frederick Douglass Boulevard], proximate to Plaintiff Turner's residence.

27. Plaintiff Trevis Turner has been employed as a personal trainer at the New York Sports Club for approximately one year.

28. Prior thereto, Plaintiff Trevis Turner worked as a health inspector for the City of New York for approximately one year.

29. Furthermore and for approximately two years prior to his employment as a health inspector, Plaintiff Trevis Turner worked at the Red Lobster on 42nd Street, New York City, New York.

30. Plaintiff Trevis Turner graduated from Canarsie High School, Brooklyn, New York.

31. Plaintiff Trevis Turner attended Johnson & Wales University in Charleston South Carolina where he obtained an Associate Degree in Culinary Arts in 2003. Prior thereto, the Plaintiff attended Brooklyn College for one year where he majored in the area of nutrition

32. Before moving to his present residence, Plaintiff Trevis Turner resided with his mother and father at their residence in the Mill Basin section of Brooklyn, New York.

33. Plaintiff Trevis Turner has an older brother.

34. Plaintiff Tarirai Chivore resides at 528 West 152nd Street, Apt. # 22 New York City, New York 10031.

35. Plaintiff Tarirai Chivore has resided at the foregoing address for approximately one year.

36. Plaintiff Tarirai Chivore resides at the foregoing address with his brother.

5

37. Plaintiff Tarirai Chivore is a legal resident alien with an FI student status.

38. Plaintiff Tarirai Chivore was born and raised in Masvingo, a small town in the country of Zimbabwe on the continent of Africa.

39. Plaintiff Tarirai Chivore came to the United States on an F1 Student Visa in September, 2002.

40. Plaintiff Tarirai Chivore attended Alliant International University in San Diego, California and he graduated from Alliant International University, Magna Cum Laude with a Bachelors Degree in International Business Administration, in the spring, 2005.

41. Plaintiff Tarirai Chivore then moved to New York City to pursue his studies in Urban Planning and International Affairs in the Graduate School of Architecture, Planning and Preservation at Columbia University.

42. During the course of his graduate studies, Plaintiff Tarirai Chivore did his graduate studies internship at the United Nations as an assistant to the United Nations High Representative for Least Developed Countries.

43. In addition, Plaintiff Tarirai Chivore received a Community Planning Fellowship in the Manhattan Borough President's Office where Plaintiff Tarirai Chivore worked with Community Board # 10 in Central Harlem.

44. In the spring, 2007, Plaintiff Tarirai Chivore graduated from Columbia University with a Master of Science degree in Urban Planning.

45. Consistent with his FI Student status, Plaintiff Tarirai Chivore is given additional time to engage in optional practical training with an employer of his choice during which optional period of time Plaintiff Tarirai Chivore can elect to either return to Zimbabwe or pursue a work visa to remain in the United States.

46. At present and while Plaintiff Tarirai Chivore is seeking more permanent employment as a professional in his

areas of concentration as described, Plaintiff Tarirai Chivore has been employed as a retail sales representative for Bloomingdales at its flag ship store on Lexington Avenue in New York City.

47. Plaintiff Tarirai Chivore has been employed at Bloomingdales for approximately one year.

48. The Plaintiffs are friends and have known each other for approximately one year.

49. On Friday, January 11, 2008, the Plaintiffs went out to a club in New York City.

50. The Plaintiffs went to a club known as "Shelter".

51. The club is located in the Village area of Manhattan, New York City.

52. At or about 5:00 A.M. or thereabouts, the Plaintiffs, utilizing their respective "unlimited" Metro Cards which each had in his possession, boarded an "A" train at Houston Street to return to Plaintiff Trevis Turner's residence where Plaintiff Tarirai Chivore was going to stay rather than going to his own residence.

53. Each of the Plaintiffs possessed his own individual Blackberry. Plaintiff Trevis Turner's Blackberry is a "Blackberry Curve" and Plaintiff Tarirai Chivore's Blackberry is a "Blackberry Pearl".

54. The Plaintiffs disembarked from the "A" train at 145th Street and St. Nicholas Avenue subway station and they exited the subway station to the street.

55. Because Plaintiff Trevis Turner had to go to the bathroom, the Plaintiffs ran down the hill from the subway toward Plaintiff Trevis Turner's residence at 2722 8th Avenue [Frederick Douglass Boulevard], New York City, New York.

56. Plaintiff Trevis Turner's residence in located in a building across the street from a Pathmark store

57. At or about 145th Street and 8th Avenue [Frederick Douglass Boulevard], proximate to a Pathmark Store, approximately four police vehicles, with lights ablaze,

7

approached the Plaintiffs and came to a stop proximate to the sidewalk on which the Plaintiffs were situated.

    58. Approximately eight New York City Police Officers exited their vehicles with their guns drawn.

    59. The New York City Police Officers had their weapons drawn.

    60. Because the Plaintiffs were concerned for their lives and for no other reason, the Plaintiffs got down on the sidewalk and put their hands out.

    61. The Plaintiffs were, with good grounds, concerned for their lives because of the conduct of other New York City Police Officers in the recent past who, with guns drawn, had, at least with impunity to this point, approached unarmed, otherwise innocent African Americans and shot and killed and/or otherwise seriously injured those residents of this City.

    62. The Police Officers, then, physically engaged the Plaintiffs, who did not resist, and handcuffed each of them. The Police Officers put knees on the shoulder neck areas of each of the Plaintiffs and utilized force which was unnecessary and unreasonable because the Plaintiffs were prone and were not resisting and were demonstrating compliance, albeit a compliance out of a fear of harm and a concern for their very well being and safety and their very lives.

    63. The Plaintiffs were informed that they were being arrested for allegedly assaulting and robbing a taxi driver at 141st Street and Bradhurst Avenue

    64. The Plaintiffs were transported to the 32nd Precinct.

    65. The Plaintiffs were processed at the 32nd Precinct.

    66. The Plaintiffs respective Blackberries were seized and vouchered.

    67. During their stop, detention, and eventual custodial detention at the 32nd Precinct, the Plaintiffs were informed that the police allegedly had been informed by a taxi driver that he had been assaulted and robbed of

his cell telephone at or about 4:30 A.M. in the vicinity of 141st Street and Bradhurst Avenue.

68. The Plaintiffs made it known that they had not been at 141st Street and Bradhurst Avenue at or about 4:30 A.M; that they had been at a club in the Village and had, utilizing their Metro Cards, of which the Plaintiffs were then in possession, taken the "A" train exited at the St. Nicholas Avenue and 145th Street and were on their way to Plaintiff Turner's residence at 8th Avenue [Frederick Douglass Boulevard] and 145th Street and were almost there, when, just after they had exited the subway, they had been stopped and detained and arrested by the officers.

69. The Plaintiffs did not have a cell telephone in their respective possession, only their respective Blackberries.

70. The Plaintiffs requested that the police check their respective Metro Cards to establish what time they had gotten on the "A" train and such would confirm that they could not have been at 141st Street and Bradhurst Avenue and involved in the alleged assault and robbery of a taxi cab driver when the alleged robbery was alleged to have taken place since they had entered into the subway at Houston Street perhaps forty minutes prior to the Plaintiffs' arrest at or about 5:30 A.M.

71. The Plaintiffs never saw at the stop and detention a taxi cab and/or its driver present when the Police Officers stopped and detained the Plaintiffs and took the Plaintiffs into custody, this notwithstanding that the Plaintiffs were informed that they had been identified at that location by the alleged victim of the robbery and assault and this notwithstanding that, when the Plaintiffs asked the Police Officers the description given to the Police Officers by the alleged victim of his assailants when the alleged victim made the complaint to the Police some time prior to the stop and detention, the Police Officers could not do so which lead the Plaintiffs to believe that no specific description of the assailants had been given to the Police Officers by the alleged victim.

72. The Plaintiffs were fingerprinted and photographed.

73. The Plaintiffs were transported to Manhattan Central Booking.

74. At or about 5:00 P.M. or 6:00 P.M. on Sunday, January 13, 2008, each of the Plaintiffs appeared in Criminal Court of the City of New York, State of New York, County of New York where they were arraigned and then released on their own recognizance and informed and directed to appear back in Court on April 30, 2008.

75. The Plaintiffs did return to Court on April 30, 2008 when and where, upon the Motion of the New York County District Attorney's Office, their respective cases were dismissed and the records sealed.

76. The Plaintiffs were, then, able to retrieve their respective Blackberries which, at the time of their stop, detention, and arrest, had been retained and maintained by the police even though neither of those Blackberries was a "cell telephone" alleged to have been stolen from an alleged taxi driver.

77. Neither of the Plaintiffs had ever been arrested prior to the afore-described incident.

78. Among the Police Officers involved in the stop, detention, and custodial arrest and all associated therewith including the reckless and deliberately indifferent "investigation" of the alleged assault and robbery of the alleged taxi driver was the Plaintiffs' arresting Officer, "Joe" Cozart.

79. Police Officer Cozart and his colleague "John Does" including the Desk Officer at the 32nd Precinct, were reckless and deliberately indifferent to the rights, security and liberty of each of the Plaintiffs and consciously avoided reasonable further inquiry, without compromising law enforcement functions or placing any one at risk, which would have made it absolutely clear, if it already was not clear to the Defendants as it should have been on its face, that there was no probable cause basis for detention and the arrest of either of the Plaintiffs and the preferral of charges against either of the Plaintiffs, the latter of which caused the New York County District Attorney's Office to move to dismiss the charges on the first Court appearance of the Plaintiffs on April

30, 2008 after their respective arraignments took place on January 13, 2008.

80. While the actions and conduct of the Defendant New York City Police Officers were unlawful, those actions and conduct were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as a New York City Police Officer and as an agent and as an employee of the City of New York.

81. There was no basis for the stop and detention of the Plaintiffs and there was no probable cause for the custodial arrests of the Plaintiffs or for the selective and discriminatory preferral of charge against the Plaintiffs or for the prosecution of the Plaintiffs.

82. The Defendant Officers intentionally, recklessly and with deliberate indifference consciously ignored the manifest exculpatory evidence when they arrested the Plaintiffs and preferred charges against the Plaintiffs.

83. The Defendant Officers intentionally and with reckless and deliberate indifference to the right of the Plaintiffs to be secure in their constitutionally recognized and guaranteed liberty interests elected not to take further reasonable investigatory steps which, if taken, would not have caused risk to the law enforcement mission, but rather would have promoted the just and reasonable enforcement of the law enforcement mission, and would not have, if taken, posed or increased a risk to any individual or individuals.

84. The Defendant Officers conscious, intentional, and reckless and deliberately indifferent and racially discriminatory actions and conduct propelled the probable cause lacking custodial arrests of the Plaintiffs and the malicious preferral of unfounded, totally evidence lacking charges against the Plaintiffs, the latter of which was manifest by the fact that the New York County District Attorney's Office moved to dismiss the charges on April 30, 2008 at the first Court appearance after the Plaintiffs had previously been arraigned on January 12, 2008 and released on their own recognizance.

85. The actions and conduct herein described were propelled by the crime offense enforcement initiatives of

the City of New York which are grounded in the philosophy of the "ends justifies the means" including but not limited to racial and national origin profiling that propels New York City Police Officers to make unlawful and otherwise unjustified stops and detentions and custodial arrests and detentions of individuals simply because of the race of the individual and/or of because of the actual or perceived national origin of the individual; and/or cause law enforcement officers to take short cuts and to discriminatorily and intentionally and deliberately and with conscious indifference to the rights of innocent individuals avoid undertaking reasonable investigatory steps, without posing a risk to any individual or to the law enforcement mission, which, if taken, would make it abundantly clear, even if it was without such further investigation it was already abundantly clear, that there was no probable cause basis for the arrest and detention and preferral of charges against the individual[s] who was eventually arrested and subjected to unfounded charges.

86.  Such crime offense enforcement initiatives propel New York City police officers including the Defendants herein to make stops, detentions, and custodial arrests where there is no probable cause for any arrest and, by such, to generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress crime offenses.

87.  The policy and practices have a disproportionate impact on African Americans and persons of color and/or on persons of actual or perceived national origin who, because of their race and/or color and/or actual or perceived national origin, are, disproportionately and for no other reason but the race and/or color and/or actual or perceived national origin factor, singled out for unlawful, probable cause lacking arrests and otherwise discriminatory and derogatory treatment, based on those considerations and the bias associated therewith.

88.  The Plaintiffs were discriminatorily and falsely arrested and subjected to racial and/or color and/or national origin discriminatory conduct.

89.  The actions, conduct, policies and practices and customs herein described violated the Plaintiffs' rights as guaranteed under the Fourth and Fourteenth Amendments to

the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

90. The actions, conduct, policies and practices, and customs violated the Plaintiffs' rights under the laws and Constitution of the State of New York including unlawful stop and detention, false arrest and imprisonment, assault and battery [by way of the Plaintiffs' handcuffing],and discrimination.

91. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by each of the Plaintiffs.

92. The Plaintiffs suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering [because of their unnecessary unreasonable handcuffing and because of the unreasonable and unnecessary force utilized at the time of the stop and detention and custodial arrest].

93. The Plaintiffs have not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

94. The Plaintiffs' counsel is: James I. Meyerson, Esq., 64 Fulton Street @ Suite # 502, New York, New York 10038 [212] 226-3310 and [212 513-1006 [FAX], jimeyerson@yahoo.com.

95. The Plaintiff has no other viable remedy at law but for the institution of this litigation in order to secure full and complete redress, vindication, and justice.

V. CAUSES OF ACTION

A. FIRST CAUSE OF ACTION

96. The Plaintiffs reiterate Paragraph #'s 1 through 95 and incorporate such by reference herein.

97. The Plaintiffs were unlawfully stopped and detained and subsequently discriminatorily and selectively falsely arrested and falsely imprisoned and detained in

violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

    98.    The Plaintiffs suffered injuries and damages.

### B.    SECOND CAUSE OF ACTION

    99.    The Plaintiffs reiterate Paragraph #'s 1 through 98 and incorporate such by reference herein.

    100.    The Plaintiffs were unlawfully stopped and detained and subsequently discriminatorily and selectively falsely arrested and falsely imprisoned and excessively detained in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

    101.    The Plaintiffs suffered injuries and damages.

### C.    THIRD CAUSE OF ACTION

    102.    The Plaintiffs reiterate Paragraph #'s 1 through 101 and incorporate such by reference herein.

    103.    The Plaintiffs were subjected to racial, color, and/or perceived and/or actual national origin discriminatory treatment in violation of their rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

    104.    The Plaintiffs suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

    105.    The Plaintiffs reiterate Paragraph #'s 1 through 104 and incorporate such by reference herein.

    106.    The Plaintiffs were subjected to racial and color and/or perceived or actual national origin discriminatory treatment in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

    107.    The Plaintiffs suffered injuries and damages.

E.   FIFTH CAUSE OF ACTION

108.   The Plaintiffs reiterate Paragraph #'s 1 through 107 and incorporate such by reference herein.

109.   The Plaintiffs were subjected to malicious prosecution in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

110.   The Plaintiffs suffered injuries and damages.

F.   SIXTH CAUSE OF ACTION

111.   The Plaintiffs reiterate Paragraph #'s 1 through 110 and incorporate such by reference herein.

112.   The Plaintiffs were subjected to malicious prosecution in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

113.   The Plaintiffs suffered injuries and damages.

G.   SEVENTH CAUSE OF ACTION

114.   The Plaintiffs reiterate Paragraph #'s one through 113 and incorporate such by reference herein.

115.   The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

116.   The Plaintiffs suffered injuries and damages.

H.   EIGHTH CAUSE OF ACTION

117.   The Plaintiffs reiterate Paragraph #'s 1 through 116 and incorporate such by reference herein.

118.   The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

15

119.   The Plaintiffs suffered injuries and damages.

### I.   NINTH CAUSE OF ACTION

120.   The Plaintiffs reiterate Paragraph #'s 1 through 119 and incorporate such by reference herein.

121.   Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

122.   The Plaintiffs suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

123.   The Plaintiffs reiterate Paragraph #'s 1 through 122 and incorporate such by reference herein.

124.   The Plaintiffs were subjected to excessive, unnecessary and unreasonable force in the form of their handcuffing in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

125.   The Plaintiffs suffered injuries and damages.

### K.   ELEVENTH CAUSE OF ACTION

126.   The Plaintiffs reiterate Paragraph #'s 1 through 125 and incorporate such by reference herein.

127.   The Plaintiffs were subjected to an assault and battery by the way of their physically being taken into custody and by their handcuffing in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

128.   The Plaintiffs suffered injuries and damages.

L.   TWELFTH CAUSE OF ACTION

129.  The Plaintiffs reiterate Paragraph #'s 1 through 128 and incorporate such by reference herein.

130.  The Defendant City of New York, if the City represents its Officers, uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

131.  The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

132.  Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

133.  The Plaintiffs are entitled to recover against the City of New York for the conduct of the Defendant City's named and unnamed Officers <u>under the federal claim jurisdiction</u> pursuant to the doctrine of <u>respondeat superior</u>.

134.  The Plaintiffs suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

> [a] Invoke pendent party and pendent claim jurisdiction.
>
> [b] Award appropriate compensatory and punitive damages.
>
> [c] Award appropriate declaratory and injunctive relief.
>
> [d] Empanel a jury.
>
> [e] Award attorney's fees and costs.
>
> [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       May 21, 2008

>                   Respectfully submitted,
>
>                   /s/ James I. Meyerson_____
>                   JAMES I. MEYERSON [JM 4304]
>                   64 Fulton Street @ Suite # 502
>                   New York, New York 10013
>                   [212] 226-3310
>                   [212] 513-1006/FAX
>                   jimeyerson@yahoo.com
>
>                   ATTORNEY FOR PLAINTIFFS
>                   BY:_____